USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/27/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

POLY-AMERICA, L.P.,

        Plaintiff,

-against-

API INDUSTRIES INC.,

        Defendant.

21-CV-8195 (JSR) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

In this action, brought pursuant to the Lanham Act, 15 U.S.C. § 1071(b)(1), Poly-America, L.P. (Poly-Am) seeks review of a final decision of the Trademark Trial and Appeal Board (TTAB) granting the petition of defendant API Industries Inc. (API) to cancel Poly-Am's supplemental trademark registration for what Poly-Am calls the Orange Drawstring Mark for plastic trash bags. Compl. (Dkt. No. 1) ¶¶ 1-3. The mark consists of "the color orange as used on the drawstring portion of [the] trash bags." *Id*. ¶ 9. The TTAB cancelled the registration "on the grounds of genericness and functionality." *Id*. ¶ 21. In its genericness analysis, the TTAB noted, among other things, that Poly-Am's trash bags bearing the Orange Drawstring Mark "are sold under private label to several different retailers," under brand names including Berkley Jenson, HDX, Kirkland Signature, Styleselections, Meijer, Member's Mar, Up&Up and Great Value. *Id*. Ex. 1, at 16.

In a letter-motion dated March 21, 2022 (Dkt. No. 44), API asked the Court to compel Poly-Am to produce, *inter alia*, documents responsive to API's Request for Production (RFP) No. 3, including "(d) records of sales of product which bears the Orange Drawstring Mark." (*Id*. at 2.) By Order dated March 28, 2022 (March 28 Order) (Dkt. No. 51), the Court granted the motion in part and directed Poly-Am to produce the requested documents no later than April 11, 2022. (March 28 Order at 2.)

In a letter-motion dated May 9, 2022 (May 9 Ltr.) (Dkt. No. 60), API advises the Court that Poly-Am has refused to produce the documents responsive to RFP 3(d), and requests that the Court (i) again order them produced and (ii) award API its fees incurred in making the present application. (May 9 Ltr. at 1.)

In its responding letter, dated May 12, 2022 (May 12 Ltr.) (Dkt. No. 61), Poly-Am argues that it should be "relieved of its obligation" to produce sales data regarding products bearing the Orange Drawstring Mark because, after this Court issued the March 28 Order, Poly-Am amended certain discovery responses to admit that "the Orange Drawstring Mark has not achieved secondary meaning." May 12 Ltr. at 2. Poly-Am concedes that the parties still dispute whether the Orange Drawstring Mark is generic, but argues, citing *Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 127 (Fed. Cir. 2018), that while the sales figures of other companies using the mark in question may be relevant to genericness, "a court may not rely on Poly-America's own sales data as part of a genericness inquiry." *Id*. Poly-Am requests that the March 28 Order be modified to reflect the this "change of circumstance" *Id*. at 3.

No conference is required. API has the better end of the parties' dispute.

*First*, Poly-Am violated the May 12 Order and exposed itself to sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A) when – without seeking any modification from the Court or obtaining any agreement from its adversary – it simply refused to produce documents within the scope of that Order. The Federal Rules of Civil Procedure do not permit a party to decide for itself when, based on "changed circumstances," it need not obey an Order of the Court.

*Second*, *Royal Crown* does not support Poly-Am's position. In that case, Royal Crown sought to require Coca-Cola to disclaim the term ZERO as used in COCA-COLA ZERO, COKE ZERO, SPRITE ZERO, and other marks for Coca-Cola's diet soft drinks. 892 F.3d at 1358. In a

two-step analysis, the TTAB first found that Royal Crown "failed to demonstrate that ZERO is generic," and then found, based in part on evidence regarding Coca-Cola's extensive "sales and advertising for ZERO products," that the ZERO-bearing marks "had acquired distinctiveness." *Id*. at 1363-64. On appeal, the Federal Circuit held that the TTAB (i) erred in its genericness analysis (by failing to consider whether the relevant consuming public would consider the term ZERO to be generic for a "the subcategory of the claimed beverages encompassing the specialty beverage categories of drinks with few or no calories"), *id*. at 1367-68; and (ii) erred in failing to determine "the degree of descriptiveness conveyed by the term ZERO in the marks" and thus whether Coca-Cola had an "elevated" burden to establish acquired distinctiveness, *Id*. at 1368-69. Before remanding, the court also considered – and rejected – Coca-Cola's argument "that the [TTAB's] finding of acquired distinctiveness, especially with respect to [Coca-Cola's] sales and advertising figures, supports a finding that ZERO is not generic" *Id*. at 1370. The court explained:

> To the extent the Board relied on [Coca-Cola's] sales and advertising figures as part of the genericness inquiry, it erred in doing so. This type of evidence may be probative of acquired distinctiveness to the extent it shows that a non-generic term has gained recognition with consumers primarily as to the source of a product. *Sales and advertising figures do not, however, demonstrate that a term is not used by the public to refer to the genus of goods in question, or to a sub-group thereof*.

*Id*. (emphasis added).

According to Poly-Am, *Royal Crown* establishes that this Court "may not rely on Poly-Am's own sales data as part of the genericness inquiry." May 12 Ltr. at 2. I disagree. First, as noted above, Poly-Am's products bearing the Orange Drawstring Mark (unlike Coca-Cola's ZERO-branded soft drinks) are not, for the most part, sold under its own name. Rather, they are "sold under private label to several different retailers," Compl. Ex. 1, at 16, under "at least eight different marks." API Reply Ltr. (Dkt. No. 63) at 1. Second, "API seeks the sales figures not to 'rescue' the mark from a finding of genericness, but to *buttress* a finding of genericness." *Id*. (emphasis in the

original). Neither *Royal Crown* nor any other authority before the Court prohibits it from considering the extent of Poly-Am's private-label sales as relevant to API's argument that the Orange Drawstring Mark is or has become generic. *See generally Milwaukee Elec. Tool Corp. v. Freud America*, 2019 U.S.P.Q.2d 16, at *16 (T.T.A.B. 2019) ("as a form of trade dress, a single color applied to goods may be generic for those goods if it 'fails to serve as an indicator of source.'") (quoting *Sunrise Jewelry Mfg. Corp. v. Fred S.A.*, 175 F.3d 1322, 1326 (Fed. Cir. 1999)).

Consequently, API's letter-application is GRANTED and Poly-Am's letter-application is DENIED. Poly-Am must produce the requested sales data within 30 days. Because Poly-Am's violation of the Court's March 28 Order was not "substantially justified," and no other circumstances made an award of expenses unjust, *see* Fed. Civ. P. 37(b)(2)C), Poly-Am must pay API's reasonable expenses, including attorneys' fees, incurred in obtaining this Order. If the parties cannot resolve the amount of those expenses, API may submit an application no later than **June 10, 2022**. If attorneys' fees are sought, the application must include properly authenticated copies of the relevant attorneys' contemporaneous timesheets, as well as admissible evidence concerning the reasonableness of their hourly rates. *See New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *Scott v. City of New York*, 626 F.3d 130, 132 (2d Cir. 2010). If out-of-pocket expenses are sought, they too must be documented via admissible evidence.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 60 and 62.

Dated: New York, New York
       May 27, 2022

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**