IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POLY-AMERICA, L.P., § § Plaintiff and Counter-Defendant, § § v. § § API INDUSTRIES, INC., § § Defendant and Counter-Plaintiff. § | CIVIL ACTION NO. 1:21-cv-08195-JSR |

**RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO
API INDUSTRIES, INC.'S MOTION FOR ATTORNEYS' FEES**

**CHAMPION LLP**

Austin Champion
Texas Bar No. 24065030
Admitted *pro hac vice*
Austin.Champion@championllp.com

Eugene M. Massad, III
Texas Bar No. 24126247
Admitted *pro hac vice*
Eugene.Massad@championllp.com
----
2200 Ross Avenue, Suite 4500W
Dallas, Texas 75201
214-225-8880 | Main
214-225-8881 | Fax

**COUNSEL FOR POLY-AMERICA, L.P.**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................... iii

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 4

    I.   THE LANHAM ACT DOES NOT AUTHORIZE THIS COURT TO AWARD ATTORNEYS' FEES. ............................................................................................... 4

        A.   The Lanham Act Only Authorizes Courts to Award Fees in Exceptional Cases Involving Claims for Infringement. ................................................................... 4

        B.   API is Not the Only Prevailing Party in This Case. ........................................................ 6

    II.   THIS CASE FALLS WELL SHORT OF EXCEPTIONAL. .............................................. 8

        A.   Neither Party Had a Substantially Stronger Litigation Position Than the Other. ......... 8

        B.   Poly-America Did Not Litigate in an Unreasonable Manner or in Bad Faith. ............ 10

CONCLUSION AND PRAYER ...................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345 (Fed. Cir. 2011) ................................................. 11

*ABKCO Music, Inc. v. Sagan*, 500 F.Supp.3d 199 (S.D.N.Y. 2020) ............................................. 7

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001) ............................................................................................................................. 6

*Diamonds.net LLC v. Idex Online Ltd.*, 590 F.Supp.2d 593 (S.D.N.Y. 2008) .............................. 11

*Farberware Licensing Co., LLC v. Meyer Mktg. Co., Ltd.*, 428 Fed. Appx. 97 (2nd Cir. 2011) ... 6

*Fleischmann Distilling Corp. v. Maier Brewing Co.*, 286 U.S. 714 (1967) ............................... 5, 6

*In re Old Carco LLC*, 520 B.R. 614 (Bankr. S.D.N.Y. 2015) ....................................................... 11

*Marx v. General Revenue Corp.*, 568 U.S. 371 (2013) .................................................................. 4

*MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007) ............................................................ 11

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) .................................. 8

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 247 F.Supp.3d 76 (D.D.C. 2020) ............................................................................................................................ 7, 8

*Scotch Whiskey Ass'n v. Consol. Distilled Prods., Inc.*, No. 79 C 3107, 1981 WL 40524 (N.D. Ill. 1981) ............................................................................................................................... 5

*Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519 (2d Cir. 2018) ........................... 8

*Smart Study Co. v. B+Baby Store*, 540 F.Supp.3d 428 (S.D.N.Y. 2021) .................................. 7, 8

*Tone Bro.'s Inc. v. Sysco Corp.*, 28 F.3d 1192 (Fed. Cir. 1994) ..................................................... 9

*Tone Bro.'s, Inc. v. Sysco Corp.*, 23 U.S.P.Q.2d 1184 (S.D. Iowa 1992) ....................................... 9

*Versa Prods. Co. v. Bifold Co. (Mfg.) Ltd.*, 50.3d 189 (3d Cir. 1995) ........................................... 9

*Vital Pharms. v. PhD Mktg., Inc.*, CV 20-06745-RSWL-JCx, 2022 WL 2952495 (C.D. Cal. Jul. 26, 2022) ............................................................................................................................... 6

**Statutes**

15 U.S.C §§ 1051 *et seq* ............................................................................................................... 11

15 U.S.C. § 1071 .............................................................................................................................3

15 U.S.C. § 1117 ........................................................................................................................ 4, 6

15 U.S.C. § 1125 .............................................................................................................................3

28 U.S.C. § 2201 ...........................................................................................................................11

**Other Authorities**

10 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2668 (3d ed. 2016) ........... 8

3 J. McCarthy, *McCarthy on Trademarks and Unfair Competitions* § 10:37 (5th ed. 2019) ......... 2

S. REP. 93-1400 (1974) ................................................................................................................. 5

**Rules**

Fed. R. Evid. 801 ............................................................................................................................ 2

Fed. R. Evid. 802 ............................................................................................................................ 2

Plaintiff and Counter-Defendant Poly-America, L.P. ("Poly-America") files this Response and Memorandum of Law in Opposition to Defendant and Counter-Plaintiff API Industries, Inc.'s ("API" or "Aluf Plastics") Motion for Attorneys' Fees (the "Motion"), and would respectfully show the Court as follows:

## INTRODUCTION

The Lanham Act does not authorize district courts to award attorneys' fees to private litigants pursuing appeals from the Trademark Trial and Appeal Board ("TTAB"), which is why no district court in this Circuit has ever done so. Section 1117 of the Lanham Act only authorizes courts to award attorneys' fees in exceptional cases to prevailing litigants in suits for infringement. Poly-America did not assert any claims for infringement in this case. This is dispositive, and API's Motion must be denied.

But even assuming the Lanham Act did authorize an award of attorneys' fees on appeals from the TTAB, Poly-America's conduct in this case falls well short of "exceptional" for at least two reasons. First, attorneys' fees under the Lanham Act may only be awarded to the "prevailing party." API and Poly-America jointly submitted an Agreed Final Judgment in this case, which affirmed the TTAB's decision in favor of API and dismissed API's pending counterclaims against Poly-America. At best both parties prevailed. Second, at no time did API have a substantially stronger litigation position, nor did Poly-America litigate in an unreasonable manner or in bad faith. For these reasons and the reasons set forth below, Poly-America respectfully requests the Court deny API's Motion.

## BACKGROUND

Poly-America's Mark comprising the color orange as used on the drawstring portion of trash bags was approved by the USPTO and registered on the Supplemental Register as

Supplemental Registration No. 4,027,254. The Mark was placed on the Supplemental Register because it had not acquired secondary meaning at the time of registration. Despite this, the USPTO determined the Mark was capable of acquiring secondary meaning in the future and allowed the Mark to proceed to registration on the Supplemental Register. By virtue of its placement on the Supplemental Register, Poly-America was afforded a limited set of rights, including: (1) the ability to bring suit for infringement in federal court; (2) use of the "R in a circle symbol" to notify and deter others from using similar marks; and (3) having the registration cited in USPTO Office Actions refusing third-party applications for similar marks, and more. 3 J. McCarthy, *McCarthy on Trademarks and Unfair Competitions* § 10:37 (5th ed. 2019). Notably, however, the Mark's registration on the Supplemental Register did not, by itself, afford Poly-America any rights to bring claims against others for infringement absent proof that the Mark had acquired secondary meaning.

Unhappy with Poly-America's registration for the Mark, API filed a Petition to cancel Poly-America's Mark on January 8, 2016, Cancellation No. 92062601. The TTAB granted API's Petition and cancelled Poly-America's registration on February 19, 2020, stating the Mark was generic and functional.[1] Poly-America moved for reconsideration, which was denied. Poly-America timely appealed the TTAB's decision.

Poly-America filed its Original Complaint for *de novo* review of the TTAB's decision in the United States District Court for the Eastern District of Texas on October 23, 2020.[2] 15 U.S.C.

---

[1] API includes in its Motion citations to the testimony of API's Vice-President of Sales, Mimi Oratz and Poly-America's Vice-President of Sales, Trent Mallory. [Dkt. #84 at 4-5]. Poly-America has previously objected to the introduction of Ms. Oratz's testimony as inadmissible hearsay. [Dkt. #54 at 1]. The testimony consists of statements made by a representative of Home Depot, relayed to an unknown individual, and later told to Ms. Oratz. The testimony is being offered to prove the truth of certain statements by the unknown individual and to infer nefarious conduct by Poly-America. Fed. R. Evid. 801, 802. In addition, Mr. Mallory's testimony is described as "tantamount to charging anyone using the [Mark] as a bad faith infringer." [Dkt. #84 at 5]. This is blatantly incorrect. Mallory's testimony is nothing more than speculation as to why another manufacturer may want to use the color orange for their trash bag drawstrings. API fails to include in the record the question asked of Mr. Mallory.

[2] Complaint for *De Novo* Review of Decision of Trademark Trial and Appeal Board [Dkt. #1].

**RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION**     2
**TO API'S MOTION FOR ATTORNEYS' FEES**

§ 1071. Poly-America did not assert any claims for infringement under § 1125(a), (c), or (d) throughout the course of the appeal. 15 U.S.C. § 1125. In fact, Poly-America asserted no claims at all. The case was later transferred to the Southern District of New York. There, API filed its Original Answer and Counterclaims on November 1, 2021.[3] API's Counterclaims sought declaratory judgments "under the Trademark Act and the common law" that (a) Poly-America's Mark was invalid; and (2) API's use of the Mark would not infringe any rights of Poly-America.[4][5]

On March 28, 2022, Poly-America filed a Motion to Dismiss API's counterclaims.[6] Poly-America asserted that API's requests for declaratory judgment should be dismissed under Rule 12(b)(6) for failure to state a claim and Rule 12(b)(1) for lack of subject matter jurisdiction.[7] This motion was never adjudicated by the Court. On April 19, 2022, Poly-America served its Supplemental Objections and Responses to API's First Set of Requests for Admission and admitted that the Mark had not achieved secondary meaning in commerce. On May 20, 2022, API filed its Motion for Summary Judgment, based in part on Poly-America's supplemental response, requesting the Court declare that Poly-America has no protectable trademark rights in its Mark.[8] API's Motion for Summary Judgment was fully briefed but never adjudicated by the Court.[9]

While both Poly-America's Motion to Dismiss and API's Motion for Summary Judgment were pending, the parties conferred and reached a compromise. The parties filed an Agreed Motion

---

[3] Defendant's Answer and Counterclaims ("Counterclaims") [Dkt. #32].
[4] *Id*. at 2, 8.
[5] API states that it the original bases for cancellation up on appeal (that the Mark was generic and functional) were more than sufficient to succeed, yet API also introduced an additional two bases for recover later shown to be meritless.
[6] Plaintiff and Counter-Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Motion to Dismiss") [Dkt. #49].
[7] The Motion to Dismiss has been characterized by the Court as a Motion for Judgment on the Pleadings under Rule 12(c); the standard for adjudicating the Motion remained unchanged.
[8] API's Memorandum of Law in Support of Motion for Summary Judgment ("MSJ") [Dkt. #65].
[9] Poly-America's Response and Memorandum of Law in Opposition to API's Motion for Summary Judgment ("MSJ Response") [Dkt. #73]; API's Reply Memorandum of Law in Support of Motion for Summary Judgment ("MSJ Reply") [Dkt. #75].

for Entry of Final Judgment on July 1, 2022, and the Court entered the Agreed Final Judgment on July 5, 2022.[10] In the Agreed Final Judgment, the Court ordered that the TTAB's Final Decision be affirmed, and API's Counterclaims be dismissed.

Still unhappy with the agreed outcome for this case, API then filed its Motion for Attorney's Fee on July 19, 2022, arguing the case was exceptional in nature and API is entitled to receive its attorneys' fees.[11]

## ARGUMENT

I.  **THE LANHAM ACT DOES NOT AUTHORIZE THIS COURT TO AWARD ATTORNEYS' FEES.**

   A.  **The Lanham Act Only Authorizes Courts to Award Fees in Exceptional Cases Involving Claims for Infringement.**

API's Motion should be denied because the Lanham does not authorize this Court to award attorneys' fees in connection with an appeal from the TTAB. Under the American Rule, each party must pay their own attorneys' fees, regardless of the outcome of the case, unless a statute or contract expressly provides otherwise. *Marx v. General Revenue Corp.*, 568 U.S. 371, 382 (2013). The Lanham Act permits a court to award attorneys' fees only in connection with claims for infringement. Indeed, under the Lanham Act, attorneys' fees may only be awarded under Section 1117 to: (1) a prevailing party; (2) on claims for "a violation of any right of the registrant of a mark;" and (3) where the case is deemed exceptional. 15 U.S.C. § 1117(a) (West 2022). Simply put, a prevailing party may only be awarded attorney's fees on claims for infringement—claims which were never raised in this case.

---

[10] Agreed Motion for Entry of Final Judgment [Dkt. #79]; Agreed Final Judgment [Dkt. #80].
[11] Notice of Motion for Attorney's Fee [Dkt. #81]; Memorandum of Law in Support of Motion for Attorney's Fee ("Motion for Fees") [Dkt. # 84].

In 1967, the Supreme Court affirmed a Ninth Circuit decision reversing an award of attorneys' fees in a trademark infringement action arising under the Lanham Act. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 286 U.S. 714 (1967). In reaching its decision, the Court acknowledged the American Rule and concluded courts cannot create judicial exceptions to the general rule that attorney's fees are not recoverable in the context of statutory causes of action for which the legislature has prescribed remedies. *Id.* at 719. The Court also noted that Congress had expressly allowed for recovery of attorneys' fees in patent infringement actions. *Id*. at 720-21. But Congress had failed "several attempts" to enact similar provisions in the Lanham Act. *Id*. at 721.

A few years later, in 1975, Congress finally amended § 1117 of the Lanham Act to allow a prevailing party to recover attorneys' fees in infringement actions in exceptional cases. The Senate Report from the Committee on the Judiciary noted the Supreme Court's opinion in *Fleischmann* prompted the amendment. S. REP. 93-1400, at 7133 (1974). The Report further confirmed that the amendment would allow recovery of attorneys' fees "in exceptional cases, i.e., infringement cases where the acts of infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" *Id*. The statutory text and the legislative history of the 1975 amendment to the Lanham Act make clear that Congress intended only to allow recovery of attorneys' fees in connection with claims for trademark infringement. Because Congress did not expressly allow for recovery of attorneys' fees in connection with other claims (or appeals) arising out of the Lanham Act, this Court lacks authority to award fees here.[12] *See Scotch Whiskey Ass'n v. Consol. Distilled Prods., Inc.*, No. 79 C 3107, 1981 WL 40524, at *7 (N.D. Ill. 1981) (denying an award of attorney's fees where there was no claim for infringement).

---

[12] Section 1071 expressly authorizes the Court to award fees to the USPTO if the Director intervenes and prevails on an appeal. It does not authorize courts to award fees to private litigants that prevail on an appeal.

**RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION**                                                           5
**TO API'S MOTION FOR ATTORNEYS' FEES**

In this case, Poly-America appealed a determination from the TTAB. It did not assert a single cause of action, and it certainly never asserted a claim for infringement. Moreover, Poly-America never claimed any violation of rights under § 1125(a), (c), or (d)—the three provisions under which the Lanham Act authorizes an award of attorneys' fees in exceptional cases. 15 U.S.C. § 1117(a); *Vital Pharms. v. PhD Mktg., Inc.*, CV 20-06745-RSWL-JCx, 2022 WL 2952495, at *3 (C.D. Cal. Jul. 26, 2022) ("The Lanham Act provides that once trademark infringement has been established" a party is entitled to recovery.). *Fleischmann* precludes any award of attorneys' fees, and API's Motion must be denied. *Fleischmann*, 286 U.S. 714.

### B. API is Not the Only Prevailing Party in This Case.

Even assuming the Lanham Act authorizes an award of attorneys' fees in connection with an appeal from the TTAB, API's Motion should still be denied because API is not the only prevailing party in this case. Section 1117 of the Lanham Act, entitled "Recovery for Violation of Rights," provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). This single sentence imposes three requirements that must be satisfied for a party to obtain attorney fees: (1) the case must be exceptional, (2) the attorney fees sought must be reasonable, (3) the party seeking fees must be the prevailing party. Even if these three requirements were satisfied, attorneys' fees are still to be awarded at the discretion of the district court. *Farberware Licensing Co., LLC v. Meyer Mktg. Co., Ltd.*, 428 Fed. Appx. 97, 100 (2nd Cir. 2011).

A prevailing party is traditionally one who has been awarded some relief by the court. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001). Specifically, a prevailing party is one which succeeds on any significant issue in the litigation achieving some benefit which the party sought in bringing suit. *ABKCO Music, Inc. v.*

*Sagan*, 500 F.Supp.3d 199, 211 (S.D.N.Y. 2020). A defendant can also be a prevailing party under the Lanham Act. *Smart Study Co. v. B+Baby Store*, 540 F.Supp.3d 428, 432 (S.D.N.Y. 2021).

Here, Poly-America sought an appeal from the TTAB's decision to cancel its registration on the Supplemental Register. In response, API asserted counterclaims under the "Trademark Act" and the common law, essentially seeking a declaration of its rights. Through the Agreed Final Judgment, both Poly-America and API were successful in obtaining relief.[13] The Court affirmed the TTAB decision, but it also dismissed API's counterclaims.[14] Because of the mixed nature of the judgment, no single party has prevailed. *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 247 F.Supp.3d 76, 113 (D.D.C. 2020) (refusing to award attorneys' fees and ordering both parties to bear their own costs where the plaintiff and defendant each prevailed in the court's judgment).

Additionally, the Agreed Final Judgment was the result of an Agreed Motion for Entry of Final Judgment.[15] It was the result of compromise and settlement between the parties. API suggests "Poly-America caved and sought a settlement of the action" out of fear for the Court's order on discovery and API's pending Motion for Summary Judgment.[16] It is equally likely that API "caved" out of fear the Court would grant Poly-America's Motion to Dismiss API's counterclaims for failure to state a claim and lack of subject matter jurisdiction.[17] Notwithstanding API's rhetoric, the Court never made any determinations as to the merits of any of these arguments. Instead, both parties submitted the Agreed Motion for Entry of Final Judgment stipulating to the affirmation of the TTAB decision and the dismissal of API's counterclaims.

---

[13] Agreed Final Judgment [Dkt. #80].
[14] *Id*.
[15] Agreed Motion for Entry of Final Judgment [Dkt. #79].
[16] Motion for Fees [Dkt. #84] at 8.
[17] Motion to Dismiss [Dkt. #49].

**RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION**     7
**TO API'S MOTION FOR ATTORNEYS' FEES**

Both API and Poly-America were granted relief by the Court; therefore, both parties are "prevailing." *See Paleteria*, 247 F.Supp.3d at 114-15 (refusing to award attorneys' fees because both parties prevailed on at least some claims) (collecting cases where courts declined to award costs due to each party's prevailing status); *see also* 10 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2668 (3d ed. 2016) (noting that the denial of costs to both sides "has been considered appropriate when neither side entirely prevailed or when both sides prevailed").

## II.   THIS CASE FALLS WELL SHORT OF EXCEPTIONAL.

Even if the Lanham Act authorized an award of fees in connection with an appeal from the TTAB, and even assuming API was the only prevailing party, API's Motion should still be denied because this was not an exceptional case. This Court has adopted the *Octane Fitness* standard for determining whether a case is "exceptional." *Smart Study*, 540 F.Supp.3d at 432. Under this standard, the Court looks at the totality of the circumstances and deems "exceptional" a case which "stands out from others with respect to the substantive strength of a party's litigating position…or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530-31 (2d Cir. 2018) ("concluding that under the Lanham Act, an exceptional case is one that stands out from others in the manner articulated by *Octane Fitness*").

### A.   Neither Party Had a Substantially Stronger Litigation Position Than the Other.

First and foremost, API's litigation position was by no metric substantially stronger than Poly-America's. Both parties came to the suit with competing legal theories ripe for determination by the Court. In its Motion, API repeatedly suggests Poly-America should not have pursued its appeal because the Mark had not obtained secondary meaning. This argument misses the point. Whether the Mark has achieved secondary meaning was irrelevant to the central issue on appeal—

whether the Mark *could* ever obtain secondary meaning.[18] Poly-America rightfully brought this appeal in a good faith effort to have its Mark reinstated on the Supplemental Register.

While the TTAB found the Mark was generic and functional, Poly-America believed the Mark was capable of obtaining secondary meaning and was entitled to registration on the Supplemental Register. Poly-America pointed to the Anonymous Source Rule and argued that consumers could still associate its Mark with a single source—even if consumers did not know the identity of that source. *Tone Bro.'s Inc. v. Sysco Corp.*, 28 F.3d 1192 (Fed. Cir. 1994) (applying the anonymous source rule in connection with private-label products and concluding retail consumers need not associate a mark with a specific source, but merely a single source).

API's argument that Poly-America's Mark could never achieve secondary meaning is both misplaced in the current motion and gratuitously conclusory in nature. API presumes that Poly-America's private labeling is an absolute prohibition on obtaining secondary meaning. This is not true.[19] While private labeling is relevant to a determination of secondary meaning, "extensive private labeling arrangements [do not] necessarily make it impossible…to establish" secondary meaning. *Tone Bro.'s*, 28 F.3d at 1204. At the very least, there exists a fact issue related to whether consumers of the relevant products could associate orange drawstring trash bags with a common source regardless of the private labeling arrangements between Poly-America and its customers. *Id.* at 1205.

Poly-America pursued this appeal in an effort to reinstate its Mark on the Supplemental Register and not, as API presumes, as an attempt to needlessly litigate an alleged losing argument

---

[18] API also baselessly asserts "that Poly-America well knew that its claimed mark was not protectible" and that Poly-America needlessly "dragged out the issue." Motion for Fees [Dkt. #84] at 9. API offers no evidence to support such a fanciful conclusion.

[19] API cites to *Versa Prods. Co. v. Bifold Co. (Mfg.) Ltd.*, 50.3d 189, 216 (3d Cir. 1995), which in turn cites to *Tone Bro.'s, Inc. v. Sysco Corp.*, 23 U.S.P.Q.2d 1184 (S.D. Iowa 1992) for its proposition on the effect private labeling has on secondary meaning. This district court ruling was vacated by the Federal Circuit in *Tone Bro.'s Inc. v. Sysco Corp.*, 28 F.3d 1192 (Fed. Cir. 1994) which Poly-America now cites.

from the beginning. Poly-America's claims were meritorious and brought in good faith. While the Court never adjudicated the merits of both parties' claims and counterclaims, Poly-America's desire to have the TTAB's decision reversed based on sound legal and factual arguments should not and cannot weigh in favor of finding that either party held a substantially stronger litigation position.

    **B. Poly-America Did Not Litigate in an Unreasonable Manner or in Bad Faith.**

Poly-America's litigation position and the manner in which it litigated was never based on bad faith intentions as API suggests. Poly-America admittedly supplemented its initial discovery responses and admitted that the Mark had not acquired secondary meaning. But supplementing discovery responses is completely consistent with—if not encouraged by—the Federal Rules and is in no way a mark of bad faith litigation. Poly-America never attempted to prolong litigation, engage in bad-faith discovery, engage in unreasonable motion practice, or otherwise engage in conduct that would increase the costs or complexities of the case or otherwise impose an undue burden on API.[20] Unfortunately, the same cannot be said for API.

In response to Poly-America's appeal, API filed counterclaims seeking a declaration of its rights.[21] API now admits its counterclaims were duplicative of the relief it would receive if it simply prevailed on Poly-America's appeal.[22] Moreover, API admits that "any one" of its four different bases for relief "would have sufficed to achieve its goal" including the original two bases on appeal.[23] Worse still, API's counterclaims were meritless. First, API sought declaratory relief under "the Trademark Act" and "the common law."[24] But neither the Trademark Act nor the

---

[20] The entirely reasonable amount of API's asserted attorneys' fees ($56,104.82) further aids in proving that Poly-America did not force unnecessary litigation in this matter.
[21] Counterclaims [Dkt. #32].
[22] *See* Motion for Fees [Dkt. #84] at 1 ("Thus once the case reached this Court, API had four separate reasons it should be permitted to use the orange color.")
[23] Motion for Fees [Dkt. #84] at 13.
[24] Counterclaims [Dkt. #32].

**RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION**    10
**TO API'S MOTION FOR ATTORNEYS' FEES**

common law authorize this Court to declare the rights of API. The Lanham Act does not provide for declaratory judgments as a possible remedy, and in all of its briefing, API never cited any authority to the contrary. 15 U.S.C §§ 1051 *et seq*. Further, a declaratory judgment is not available under "the common law" because Congress has codified this remedy in the Federal Declaratory Judgment Act. 28 U.S.C. § 2201. As a result, a claim for declaratory judgment cannot be brought under "the common law" as a matter of law.

API's additional counterclaims also lacked subject matter jurisdiction. API failed to submit sufficient evidence showing an actual controversy—an essential prerequisite to subject matter jurisdiction for a declaratory judgment action. *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011) (citing *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007)); *Diamonds.net LLC v. Idex Online Ltd.*, 590 F.Supp.2d 593, 601 (S.D.N.Y. 2008); *In re Old Carco LLC*, 520 B.R. 614, 619 (Bankr. S.D.N.Y. 2015). API's request for declaratory relief rested on the assertion that because the Mark lacked secondary meaning, declaratory relief was appropriate. This was not enough. API similarly failed to present any evidence suggesting Poly-America had accused API of infringement or otherwise threatened an action for trademark infringement. As there was no controversy, there was no subject matter jurisdiction. While Poly-America did not litigate this case in an unreasonable manner, API needlessly introduced additional issues for litigation, all of which Poly-America had to zealously defend against.

Ultimately, despite API's finger pointing and cherry picking of the facts, the conclusion is simple: this suit was in no way exceptional. Neither party's litigation position was substantially stronger than the other, and Poly-America did not litigate the case in an unreasonable manner. Accordingly, under the *Octane Fitness* standard, this case was not exceptional, and API's Motion should be denied.

## **CONCLUSION AND PRAYER**

For the foregoing reasons, Poly-America respectfully requests the Court deny API's Motion in its entirety.

Dated: August 2, 2022 	Respectfully Submitted,

**CHAMPION LLP**

*/s/ Austin Champion*
Austin Champion
Texas Bar No. 24065030
Admitted *pro hac vice*
Austin.Champion@championllp.com

Eugene M. Massad, III
Texas Bar No. 24126247
Admitted *pro hac vice*
Eugene.Massad@championllp.com
----
2200 Ross Avenue, Suite 4500W
Dallas, Texas 75201
214-225-8880 | Main
214-225-8881 | Fax

**COUNSEL FOR POLY-AMERICA, L.P.**

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who have consented to electronic service were served with a copy of this document through this Court's CM/ECF system and pursuant to the Local Rules on August 2, 2022.

*/s/ Austin Champion*
Austin Champion