UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│ Poly-America, L.P.,         │
│                             │
│         Plaintiff,          │          21-cv-8195 (JSR)
│                             │
│     -v-                     │          OPINION AND ORDER
│                             │
│ API Industries, Inc.,       │
│                             │
│         Defendant.          │
└─────────────────────────────┘
```

JED S. RAKOFF, U.S.D.J.:

On July 5, 2022, after nearly ten years of litigation in this Court and at the Trademark Trial and Appeal Board ("T.T.A.B."), the parties agreed upon a final judgment to settle their claims. See Dkt. No. 80, Agreed Final Judgment. The defendant, API Industries, Inc., then moved for an attorney's fees award under the Lanham Act's narrow fee-shifting provision. See Dkt. No. 81; 15 U.S.C. § 1117(a). After a careful review of the parties' submissions, the Court hereby denies the defendant's motion.

I.  **Factual Background**[1]

In 2010, the plaintiff, Poly-America, L.P., applied to register its "orange color drawstrings" mark -- a mark comprising the color orange as it is used on the drawstring portion of certain trash bags -- on the U.S. Patent and Trademark Office's ("USPTO") Principal Register. See Dkt. No. 80 at ¶ 1. A year later, it amended its

---

[1] The Agreed Final Judgment further details the facts relevant to this motion. See Dkt. No. 80.

1

application to instead seek registration of this mark on the USPTO's Supplemental Register, an application which the USPTO accepted. Id. ¶¶ 2-3. Then, more than four years later, API Industries petitioned to cancel Poly-America's registration. Id. ¶ 4. In 2020, the T.T.A.B. granted that petition and canceled Poly-America's mark on the grounds that it was "generic[] and functional[]." Id. ¶ 5. Poly-America subsequently brought this action seeking de novo review of the T.T.A.B.'s decision under 15 U.S.C. § 1071(b) of the Lanham Act. Id. ¶ 7. Finally, in 2022, the parties agreed upon a judgment, in which they "acknowledge[d] and agree[d]" that the T.T.A.B.'s cancellation decision should be affirmed, and that API Industries' counterclaims should be dismissed. Id. ¶¶ 9-10. As noted above, API Industries then filed the instant motion for attorney's fees. See Dkt. No. 81.

## II. Discussion

The general rule in federal litigation is that "[e]ach litigant pays his own attorney's fees, win or lose." Marx v. General Rev. Corp., 568 U.S. 371, 382 (2013) (citations omitted). However, the Lanham Act, the statute under which the plaintiff brought its claims, contains a narrow carveout to this "bedrock principle": in "exceptional" cases, a "prevailing" party in a trademark action brought under the act may recover for reasonable attorney's fees. See 15 U.S.C. § 1117(a).

For a case to count as "exceptional" in this context, it must "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case

2

was litigated." See Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014); see also Sleepy's LLC v. Select Comfort Wholesale Corp., 909 F.3d 519, 522 (2d Cir. 2018) (clarifying that the Supreme Court's standard for attorney's fees motions brought under the Patent Act also apply to those brought under the Lanham Act).

"[D]istrict courts," in turn, "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances," including, among other factors, the "frivolousness" and "objective unreasonableness" of the non-moving party's claims, the "motivation[s]" of the non-moving party, and the "need in particular circumstances to advance considerations of compensation and deterrence." See Smart Study Co. v. B+Baby Store, 540 F. Supp. 3d 428, 423 (S.D.N.Y. 2021); Octane Fitness, 572 U.S. at 554 n.6.

After weighing these and other relevant factors, the Court finds that this is not an "exceptional" case warranting an award of attorney's fees. First, Poly-America's arguments here are not so untethered from the governing facts and law that they could be described as "frivolous" or "objectively unreasonable." In the underlying action, the T.T.A.B. found that Poly-America's orange color drawstrings were "generic" because these orange drawstrings were sold on trash bags bearing the marks of other prominent companies like Kirkland Signature, a practice known as "private labeling." See Dkt. 1-1 at 15-17. "Generally," the T.T.A.B. explained, when a manufacturer "sells [the item bearing its mark] to [a] third part[y] for resale

3

under [that third party's mark rather than under its own mark, this] cripples any attempt to show that the consumers uniquely associate the mark with one source," and thereby, that the mark has acquired the secondary meaning necessary, in this case, for registration. See id. at 17. In other words, the T.T.A.B. canceled Poly-America's registration because, in its view, the company's use of private labeling deprived the "orange color drawstrings" mark of its ability to acquire secondary meaning. Id.

After failing to persuade the T.T.A.B. to reconsider its decision, Poly-America turned to the federal courts for a de novo review of the agency's decision, as it has a right to do under the Lanham Act. See 15 U.S.C. § 1071(b); see Dkt 80 at ¶ 7. Relying on a case from the Federal Circuit, Poly-America argued in this litigation that its use of "private labeling" did not necessarily defeat its claim of secondary meaning. Indeed, in Tone Bros., Inc. v. Sysco Corp., 28 F.3d 1192 (Fed. Cir. 1994), the Federal Circuit clarified that "extensive private labeling arrangements" do not "make it impossible" for an applicant to establish a mark's secondary meaning so long as the applicant could prove that "the relevant consumer attached significance to the [mark's] shape, . . . appearance," or other identifying qualities "as an indicator of the manufacturing source." See id. at 1204. Whatever their merits, Poly-America's claims were responsive to the T.T.A.B.'s reasons for canceling its registration and were grounded in at least plausibly relevant caselaw. Thus, at the very least, they did not lack

4

merit in a way that "stands out" from other claims. See Octane Fitness, 572 U.S. at 554 (2014).

API Industries' arguments to the contrary are unavailing. In its brief, API Industries draws several distinctions between the circumstances of this case and those of Tone Bros to argue that Poly-America's position is "unreasonable." See Dkt. 87, Def's Reply Br. at 8. Valid as these distinctions may be -- and the Court takes no position on their merits -- they do not prove that Poly-America's arguments were irrational or frivolous. To prevail on this factor, the party moving for an attorney's fees award must do more than just show that the non-moving party's litigating position was incorrect, it must persuade the Court that the party's arguments had little to no legal merit. See Small v. Implant Direct Mfg. LLC, 2014 WL 5463621, at *3 (S.D.N.Y. Oct 23, 2014) (observing that an argument is objectively unreasonable when no party "could see an opening . . . through which the argument could be squeezed").

The other factors also weigh against awarding attorney's fees to API Industries.[2] API Industries argues that Poly-America litigated

---

[2] In evaluating attorney's fees motions, courts may also consider the "need in particular circumstances to advance considerations of compensation and deterrence." Smart Study Co., 540 F. Supp. 3d at 423. "Compensation and deterrence . . . exist for the dual purposes of incentivizing parties with strong claims to litigate them and deterring parties with weak claims from embarking on wasteful litigation." Hughes v. Benjamin, 2020 WL 4500181, at *3 (S.D.N.Y. Aug. 5, 2020). Because, as explained above, the Court finds that Poly-America's claims are neither frivolous nor unreasonable, there is no need to deter future litigants from bringing similar claims. This factor thus cuts against granting an award of attorney's fees.

5

this case in bad faith because, in response to API Industries' request for admission, Poly-America reversed its earlier position that the "orange color drawstrings" mark had acquired secondary meaning. See Dkt. No. 84 at 11-12. This reversal, the defendant says, shows that "Poly-America first hoped to avoid losing by denying the obvious, thereby prolonging the action and increasing API's costs," a plan that was apparently foiled "when the Magistrate Judge's discovery order forced . . . [Poly-America] to admit the truth." See id. at 12. API Industries, however, offers no evidence that a desire to subject it to "burdensome and time-consuming responsive measures" motivated Poly-America's change in position. Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC, 2016 WL 1328936, at *3 (S.D.N.Y. Apr. 5, 2016). In any event, "most cases awarding fees involve [litigation misconduct that is] substantial" and Poly-America's single misimpression falls well short of that mark. Small, 2014 WL 5463621, at *4 (emphasis added) (citing cases).[3]

For the foregoing reasons, the Court hereby denies API Industries' motion for an award of attorney's fees. The Clerk is respectfully directed to close Dkt. No. 81 in this case.

SO ORDERED.

---

[3] Poly-America also argues that the defendant's attorney's fee petition should be denied because, in their view, (1) the Lanham Act does not authorize courts to award attorney's fees in cases like this one, where there is no claim for trademark infringement; and (2) API Industries is not a "prevailing" party as that word is defined by the Lanham Act because the final judgment dismissed the defendant's counterclaims as well. Because the Court's ruling independently disposes of this motion in favor of Poly-America, it sees no need to resolve the parties' disputes on these other issues.

New York, NY  
March 31, 2023

_____  
JED S. RAKOFF, U.S.D.J.